**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

ANNE M. MCFADDEN, *et al.*,
*Plaintiffs*,
v.
M&T BANK,
*Defendant*.

Case No. 25-cv-3101-ABA

**MEMORANDUM OPINION**

Plaintiffs Anne McFadden, Jeffrey McFadden, and CapFin Realty, LLC ("CapFin Realty") have sued M&T Bank ("M&T") for what they allege were discriminatory acts in connection with credit applications. Plaintiffs have asserted claims under the Equal Credit Opportunity Act ("ECOA") as well as under Maryland law. But some of their core allegations occurred more than five years before they filed their complaint, and are therefore untimely under the ECOA's statute of limitations. And the claims that remain fail to plausibly allege either discrimination or procedural violations of the ECOA. Thus, the Court will grant M&T's motion to dismiss as to Plaintiffs' ECOA claims and decline to exercise supplemental jurisdiction over the remaining state claims.

## I. BACKGROUND[1]

### A. Initial financing agreements

Plaintiffs Anne and Jeffrey McFadden (the "McFaddens") are a married couple. Plaintiff CapFin Realty is a Maryland limited liability company. ECF No. 9 (amended complaint) ¶ 10. Ms. McFadden is the sole member and owner of CapFin Realty. *Id.* ¶ 11.

[1] Because the case is at the pleading stage, the Court assumes the truth of Plaintiffs' allegations. *See Episcopal Church in S.C. v. Church Ins. Co. of Vt.*, 997 F.3d 149, 154—55 (4th Cir. 2021).

CapFin Tax, LLC ("CapFin Tax") is not a plaintiff, but is relevant to the events underlying the complaint. Ms. McFadden was the sole owner and member of CapFin Tax until she sold that entity in 2024. *Id.* ¶¶ 11, 17.

Ms. McFadden established CapFin Tax to purchase and operate numerous Jackson Hewitt franchises. *Id.* ¶ 17. In August and September 2017, to help finance this venture, Ms. McFadden—on behalf of CapFin Tax—applied for and obtained a term loan from M&T Bank for $150,000 and a business access line of credit ("BALOC") for $250,000. *Id.* ¶ 16. As part of the application, an M&T loan officer requested that both McFaddens sign a personal guaranty for the loan, which, after some back-and-forth, they did. *Id.* ¶ 24; ECF No. 9-3 (personal guaranty contract); *see also* ECF No. 9-1 (email correspondence between the McFaddens and the loan officer discussing the scope of the property at stake in the guaranty). M&T did not communicate to the McFaddens why M&T considered Mr. McFadden's guaranty to be necessary. ECF No. 9 ¶ 25.

In September 2018, Ms. McFadden and M&T agreed to increase the loan and BALOC amounts for CapFin Tax to $210,000 and $350,000, respectively. *Id.* ¶ 26; ECF No. 9-4 (commitment letter for 2018 loan and BALOC). Per the new arrangement, the term loan was secured by an Indemnity Deed of Trust ("IDOT") on the McFaddens' home and Ms. McFadden's personal guaranty. ECF No. 9 ¶ 27. Plaintiffs contend that the increased BALOC was secured by Ms. McFadden's personal guaranty only. *Id.* Mr. McFadden signed the IDOT but did not sign the new personal guaranty agreement. *Id.* ¶ 31.

Around the same time, CapFin Realty also acquired a mortgage from M&T to finance the purchase of a commercial building in Catonsville. *Id.* ¶ 34. And in January

2019, CapFin Tax borrowed an additional $90,000 from M&T to purchase a Jackson Hewitt franchise in Annapolis. *Id.* ¶ 35.

**B. M&T's denials and alleged interference**

In May 2019, Ms. McFadden inquired with M&T about financing another acquisition for CapFin Realty and restructuring CapFin Tax's obligations, including an increase of the BALOC. Plaintiffs allege that an M&T loan officer "strung [them] along for months" by stating that the proposals initially "looked feasible" before ultimately declining them without written explanation. *Id.* ¶¶ 38–39; *see also* ECF No. 9-8 (email from M&T bank employee stating that "things look feasible"). CapFin Realty then purchased the building using financing from another lender. ECF No. 9 ¶ 40.

At some point shortly thereafter, Ms. McFadden again applied for financing from M&T for CapFin Realty to purchase another commercial building. *Id.* ¶ 41. This application was again denied without explanation. *Id.* ¶ 42.

Plaintiffs allege that similar events took place in the summer of 2020. Ms. McFadden was developing a "major" business opportunity for CapFin Tax to acquire numerous additional Jackson Hewitt franchises. *Id.* ¶ 44–45. Plaintiffs contend that Ms. McFadden spoke with an M&T representative via telephone in July 2020 who told her that "things looked good" regarding financing. *Id.* ¶ 46. Subsequently, however, M&T claimed that Plaintiffs were "missing documents" and that CapFin Tax's business appeared to be "down." *Id.* ¶¶ 47–48. Plaintiffs contend that, in October 2020, M&T denied the financing request even after Ms. McFadden provided supplemental documents that contradicted this characterization, and that Ms. McFadden "had to request that [M&T] provide her with a written explanation." *Id.* ¶ 49.

Following this, Ms. McFadden applied to the Maryland Small Business Development Financing Authority (the "Financing Authority") to refinance the BALOC for CapFin Tax and obtain capital to improve commercial buildings owned by CapFin Realty. *Id.* ¶ 51. Plaintiffs allege, essentially, that after promising initial signs, a Financing Authority board member who was also an M&T employee, Charles Martin, advocated against the application behind the scenes and caused its denial in November 2020. *Id.* ¶¶ 53–58. Plaintiffs contend that Mr. Martin's actions are "the only plausible explanation for [the] sudden change" in their application's prospects, and that the Financing Authority denial is "further evidence of [M&T's] continued pattern of gender discrimination against Ms. McFadden and her business." *Id.* ¶¶ 57–58.

In July 2021, apparently willing to continue working with M&T, Ms. McFadden on behalf of CapFin Tax again sought to restructure the BALOC by "terming it out" and presented opportunities to finance purchases of new Jackson Hewitt franchises. *Id.* ¶ 64. Plaintiffs explain that by "term[ing] out" a loan they mean "convert[ing] [it] to a term note with amortized paydown of principal." *Id.* ¶ 2. Plaintiffs allege that, once more, after initially expressing openness, M&T denied the request to term out the BALOC in December 2021 without a written explanation. *Id.* ¶ 70. Ms. McFadden again requested that the BALOC be termed out in October 2023, and again M&T refused. *Id.* ¶ 72.

Plaintiffs contend that CapFin Tax was "forced out of business in August 2024." *Id.* ¶ 74. Plaintiffs allege that the McFaddens paid over $100,000 of their own funds in interest on the BALOC that they would not have to have paid if the BALOC had been "termed out," and that M&T agreed to "move forward with terming out" the BALOC after all in January 2025. *Id.* ¶¶ 74–75.

Plaintiffs allege that in March 2025 M&T withdrew funds from CapFin Realty's account to cover payments due on CapFin Tax's BALOC (M&T had also withdrawn funds from CapFin Tax's account). *Id.* ¶ 76. After initially taking the position that CapFin Realty was a guarantor of CapFin Tax, M&T "capitulated, returning more than $6,000 to the CapFin Realty account." *Id.* ¶ 79. As a result of the mistaken withdrawal, Ms. McFadden had two checks and one life insurance premium payment bounce. *Id.* ¶ 80. Plaintiffs contend that "[b]y September 2025," CapFin Tax was "forced to sell its assets to Jackson Hewitt at a substantial personal loss to both [McFaddens]." *Id.* ¶ 73–74. Elsewhere in the complaint, Plaintiffs state that CapFin Tax was "forced to sell its business" in August 2024 "at a loss in excess of $1 million" that "essentially wiped out [the McFaddens'] life savings." *Id.* ¶ 95.[2]

**C. Mr. McFadden's guaranty and defaults**

In April 2025, Ms. McFadden received a box of checks for CapFin Realty from M&T and "discovered that Mr. McFadden's name was printed on the checks as a co-owner of the account." *Id.* ¶ 88. Mr. McFadden was not an owner of CapFin Realty.

Around the same time, M&T "sent a series of notices of default" to Ms. McFadden, Mr. McFadden, CapFin Tax, and CapFin Realty for CapFin Tax's BALOC and CapFin Realty's mortgage on the Catonsville property. *Id.* ¶ 90. The notices stated that "CapFin Tax and Ms. McFadden were liable for immediate payment in full of the [CapFin Realty] mortgage and that CapFin Tax, Ms. McFadden, and Mr. McFadden

---

[2] At multiple points in the complaint, Plaintiffs allege that CapFin Tax was sold in August 2024. ECF No. 9 ¶ 95. But they also contend that they had access to CapFin Tax's account as of March 2025 when the issue with the withdrawals occurred. ECF No. 9 ¶ 76.

were liable for immediate payment in full of" CapFin Tax's BALOC. *Id.* M&T's position was that it was entitled to "accelerate" the CapFin Realty loan "because CapFin Tax was a co-guarantor of the note, and because CapFin Tax had gone out of business." *Id.* ¶ 92. Plaintiffs contend this was the "first time that Mr. McFadden became aware of the Bank's position that he was a guarantor" of the BALOC. *Id.* ¶ 91. Ms. McFadden paid off the CapFin Realty mortgage by obtaining re-financing at "substantial additional cost[]." *Id.* ¶ 93.

In August 2025, the McFaddens received a demand letter from M&T "assert[ing] that Ms. McFadden and, incorrectly, Mr. McFadden were personally liable for the obligations underlying" CapFin Tax's BALOC. *Id.* ¶ 96.

### D. Procedural history

Plaintiffs filed this case on September 18, 2025, ECF No. 1, and an amended complaint in October 2025. ECF No. 9. The amended complaint alleges five counts: (1) discriminatory lending practices in violation of the federal Equal Credit Opportunity Act (ECOA), 15 U.S.C. §§ 1691, *et seq.*; (2) discriminatory lending practices in violation of the Maryland Equal Credit Opportunity Act (MECOA); (3) negligence under Maryland common law; (4) violation of § 5-807 of the Maryland Financial Institutions Code; and (5) breach of the implied covenant of good faith and fair dealing. Plaintiffs also request that the Court "[d]eclare that Mr. McFadden has no legal obligation to repay the 2018 BALOC[.]" ECF No. 9 at 30.

M&T has moved to dismiss, arguing that Plaintiffs lack standing, that their claims are time-barred, and that the complaint fails to state any cognizable claims. ECF No. 11. Plaintiffs filed an opposition, ECF No. 12, and M&T filed no reply. The Court held a

hearing on July 1, 2026, and ordered the parties to file supplemental briefs regarding several issues, which they did. ECF Nos. 18–19.

## II. STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When a defendant asserts that, even assuming the truth of the alleged facts, the complaint fails "to state a claim upon which relief can be granted," the defendant may move to dismiss the complaint. Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and state a facially plausible claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering such a motion, the Court must "accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). But "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555).

Mr. McFadden is an attorney and a member of this Court's bar. He has an unusual role in this case: he represents himself pro se but also represents his two fellow Plaintiffs, Ms. McFadden and CapFin Realty (who are, therefore, *not* pro se). Typically, courts must construe pro se complaints liberally, holding them to "less stringent standards than [those] drafted by lawyers." *See Erickson v. Pardus*, 551 U.S. 89, 94

(2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Courts frequently do not liberally construe pleadings when the self-represented plaintiff is an attorney. *See Wesker v. Select Portfolio Servicing, Inc.*, Case No. 21-cv-3012-JRR, 2024 WL 4237357, at *3 n.1 (D. Md. Sept. 19, 2024) (collecting cases). But the Fourth Circuit has explicitly reserved ruling on that issue. *Willner v. Dimon*, 849 F.3d 93, 103 (4th Cir. 2017) ("While generally we 'liberally construe a pro se complaint,' we have 'not determined whether a pro se plaintiff who is also an attorney receives the benefit of this liberal construction.'") (quoting *Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 72 (4th Cir. 2016)). The Court will assume without deciding that Plaintiffs' complaint is entitled to liberal construction because, even so, it fails to state a claim for the reasons below.

## III. DISCUSSION

### A. Plaintiffs' Equal Credit Opportunity Act claims

Plaintiffs' sole federal claim is under the Equal Credit Opportunity Act (ECOA). The ECOA makes it "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction" based upon "sex or marital status," among other protected categories. 15 U.S.C. § 1691(a). An "applicant" is "any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit." *Id.* § 1691a(b).[3] The ECOA includes a private right

---

[3] The parties dispute whether Plaintiffs qualify as "applicants," and thus whether ECOA authorizes them to sue. M&T contends that non-party CapFin Tax is the only "applicant" at issue for the majority of Plaintiffs' claims, and that Plaintiffs cannot have standing as guarantors. Plaintiffs rely upon the regulatory definition of "applicant," which expressly includes "any person who is or may become contractually liable regarding an extension of credit," including "guarantors." ECF No. 19 at 2 (quoting 12 C.F.R. § 1002.2(e)). Multiple courts have held that this regulation is invalid because it is broader than the

of action for applicants against creditors who fail to comply with the statute. *Id.* § 1691e(a). This provision includes a 5-year statute of limitations. *Id.* § 1691e(f).

Plaintiffs claim that M&T committed multiple violations of the ECOA and its implementing regulations. The alleged violations can be divided into three categories.

First, Plaintiffs contend that M&T's requirement that Mr. McFadden serve as a personal guarantor in 2017 violated 12 C.F.R. § 1002.7(d). ECF No. 9 ¶ 105. That regulation forbids a creditor from "requir[ing] the signature of an applicant's spouse or other person, other than a joint applicant, on any credit instrument if the applicant qualifies under the creditor's standards of creditworthiness for the amount and terms of the credit requested." 12 C.F.R. § 1002.7(d). Plaintiffs contend that M&T required Mr. McFadden's signature but "made no determination as to the independent credit-worthiness of CapFin Tax or Ms. McFadden." ECF No. 9 ¶ 105. They further allege that CapFin Tax and Ms. McFadden were independently credit-worthy. *Id.* ¶ 108.

Second, Plaintiffs contend that M&T committed procedural violations of the ECOA by failing to provide written explanations for several of the denials. *See* 15 U.S.C.

---

statutory definition of "applicant," but the Fourth Circuit has not yet weighed in. *See Ballard v. Bank of Am., N.A.*, 734 F.3d 308, 311 n.1 (4th Cir. 2013) ("Because resolution of this issue is not determinative given our disposition of this case, we will assume, without deciding, that guarantors do qualify as applicants for purposes of ECOA."); *see also Hawkins v. Cmty. Bank of Raymore*, 761 F.3d 937, 942 (8th Cir. 2014) ("Because the text of the ECOA is unambiguous regarding whether a guarantor constitutes an applicant, we will not defer to the Federal Reserve's interpretation of applicant, and we conclude that a guarantor is not protected from marital-status discrimination by the ECOA."); *Regions Bank v. Legal Outsource PA*, 936 F.3d 1184, 1187 (11th Cir. 2019) ("[W]e conclude that a guarantor is not an 'applicant' under the Equal Credit Opportunity Act[.]"). Because Plaintiffs' ECOA claims fail for reasons other than their potential lack of status as "applicants," this Court will follow the same path as the Fourth Circuit in *Ballard* and assume, without deciding, that Plaintiffs are "applicants" within the meaning of ECOA.

§ 1691(d)(1) ("Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor."). The complaint contends that there were four requests that M&T denied allegedly without explanation. *See* ECF No. 9 ¶ 110. The first alleged denial was of a request to increase CapFin Tax's BALOC and to finance CapFin Realty's purchase of a property that housed one of CapFin Tax's Jackson Hewitt franchises sometime in late 2019 or early 2020 (the complaint does not specify the exact date of the denial but specifies that it was prior to July 2020). *See id.* ¶¶ 37–39, 44. The second alleged denial was of a request to finance CapFin Realty's purchase of a commercial building in Lutherville in approximately late 2019 or early 2020 (again, the exact date of the denial is not clear from the complaint except for that it occurred prior to July 2020). *See id.* ¶¶ 41–42, 44. The third alleged denial was of a request to finance the purchase of a large Jackson Hewitt franchise operator on the East Coast in October 2020. *See id.* ¶ 45–49. The fourth alleged denial was of a request to "term out" CapFin Tax's BALOC in December 2021. *See id.* ¶ 70.

Finally, Plaintiffs allege that M&T violated ECOA's anti-discrimination provision by discriminating on the basis of sex through its denials and actions generally, as well as specifically by interfering with CapFin Tax's application to the Financing Authority and by placing Mr. McFadden's name on the checks. *Id.* ¶¶ 114–17.

### B. Plaintiffs' claims related to events before September 2020 are untimely

At the outset, the Court must determine which of the complaint's allegations are timely. Because the Court is dismissing Plaintiffs' ECOA claim and declining to take supplemental jurisdiction over Plaintiffs' state claims for the reasons explained herein, the Court need not analyze the timeliness of Plaintiffs' claims under Maryland state law.

The ECOA's private right of action contains a five-year statute of limitations. *Id.* § 1691e(f). The original complaint in this case was filed on September 18, 2025. ECF No. 1. Thus, any alleged violations that occurred prior to September 18, 2020 are presumptively untimely unless the complaint alleges a plausible exception to the statute of limitations. *See CSX Transp., Inc. v. Norfolk S. Ry. Co.*, 648 F. Supp. 3d 679, 693 (E.D. Va. 2023) ("[O]nce Defendants illustrate that the claims are untimely *but for* the application of the continuing violation exception, [Plaintiff] bears the burden of establishing that the exception applies.") (citations omitted), *aff'd*, 114 F.4th 280 (4th Cir. 2024). Most relevantly, the statute of limitations would render Plaintiffs' allegations concerning Mr. McFadden's signing of the guaranty untimely, as the guaranty at issue was signed in 2017. *See* ECF No. 9 ¶ 109. Plaintiffs argue that (1) they are entitled to seek damages for pre-September 2020 events based on the continuing violations doctrine, and (2) at minimum they may sue to invalidate the 2017 guaranty because that claim is "defensive."

**i. The continuing violation doctrine**

"In general, to establish a continuing violation[,] the plaintiff must establish that the unconstitutional or illegal act was a fixed and continuing practice." *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 348 (4th Cir. 2011). In the Title VII context, "a time-barred discrete act claim remains time-barred even if it is part of a series of related actions, some of which occurred during the limitations period." *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 222 (4th Cir. 2016) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 222 (2002)). For this reason, employment discrimination plaintiffs may use the continuing violation doctrine when alleging numerous continuing incidents that collectively formed a hostile work environment leading to an adverse

action during the statutory period, but generally may not invoke the continuing violation doctrine to rescue untimely allegations of discrete discriminatory or retaliatory decisions that would themselves be "independently actionable." *See id.*; *see also Maisha v. Univ. of N. Carolina*, 641 F. App'x 246, 249 (4th Cir. 2016) ("General allegations of 'a pattern or practice of discrimination' are insufficient to establish a continuing violation.") (quoting *Williams v. Giant Food Inc.,* 370 F.3d 423, 429–30 (4th Cir. 2004)) (internal quotations omitted).

Though there is scant Fourth Circuit caselaw on the continuing violation doctrine as applied to ECOA claims, multiple federal courts have held that the same standard applies, as denials of credit are discrete actions more akin to discrimination or retaliation than a hostile work environment. *See, e.g.*, *Colquitt v. Manufacturers & Traders Tr. Co.*, 144 F. Supp. 3d 1219, 1229 (D. Or. 2015) (granting a motion to dismiss ECOA claims because "Plaintiff has not established Defendant's actions are a continuing-violation rather than a series of discrete acts, each of which became actionable at the time they occurred"); *Haynie v. Veneman*, 272 F. Supp. 2d 10, 16 (D.D.C. 2003) ("[T]he denial of plaintiff's credit application, like the alleged acts of discrimination and retaliation in *Morgan,* was, under ECOA, a 'discrete act[.]'") (quoting *Morgan*, 536 U.S. at 114); *see also Wise v. Vilsack*, 496 F. App'x 283, 285 (4th Cir. 2012) (explaining that "[m]ost courts that have considered ECOA discrimination claims" have borrowed the *McDonnell-Douglas* framework from "the context of Title VII employment discrimination"). In other words, an ECOA plaintiff may not render timely discrete discriminatory acts or procedural violations that were independently actionable merely because additional actionable conduct also occurred within the statutory period.

Some courts have concluded otherwise, relying on the Supreme Court's holding in *Havens Realty Corporation v. Coleman*, 455 U.S. 363 (1982), that the continuing violation doctrine applied in a class action brought under the Fair Housing Act ("FHA"). *See, e.g.*, *Ramirez v. GreenPoint Mortg. Funding, Inc.,* 633 F. Supp. 2d 922, 929–30 (N.D. Cal. 2008); *Miller v. Countrywide Bank, N.A.*, 571 F. Supp. 2d 251, 262 (D. Mass. 2008). In *Ramirez*, the district court held that named plaintiffs seeking to represent a putative class could rely upon the continuing violation doctrine in part because "[t]he ongoing discrimination plaintiffs allege could only manifest itself after a critical mass of similarly situated people experienced it, so as to bring an over-arching pattern to light." *Id.* at 930 (quoting *Davis v. Gen. Motors Acceptance Corp.,* 406 F. Supp. 2d 698, 705–06 (N.D. Miss. 2005)). But here, unlike in *Ramirez*, *Miller*, or *Havens Realty*, there is no class (or putative class) alleging a widespread discriminatory practice or policy that repeated during the statutory period and that affected numerous individuals including the named plaintiffs. *See Miller*, 571 F. Supp. 2d at 262 ("Under the *Havens Realty* theory, [P]laintiff . . . is challenging not just a single incident of conduct but a continuing policy and practice—namely the discretionary pricing policy which enables racial discriminatory practices[.]"). Plaintiffs here have only specifically alleged discrete acts that affected themselves. Thus, regardless of whether *Ramirez*'s logic correctly applies in putative class cases, it does not apply here.

Applying the "discrete acts" rule articulated in *Morgan* and *Guessous*, Plaintiffs' allegations related to conduct by M&T prior to September 18, 2020 are untimely. Those allegations include the events concerning guarantees for the BALOC in 2017 and 2018, *see* ECF No. 9 ¶¶ 17–26, and M&T's denial without written explanation of Ms. McFadden's requests to restructure CapFin Tax's BALOC and finance the purchase of

real estate for CapFin Realty that occurred in 2019 and the first half of 2020, *id.* ¶¶ 38–43. Each of these incidents was a discrete action related to a credit application. The complaint does not plausibly allege that the events that allegedly occurred during the statutory period—the "interference" with the Financing Authority, additional denials without written explanation, and the issuance of checks with Mr. McFadden's name on them—were pursuant to an overarching discriminatory policy or practice. Indeed, the complaint mostly contends that different individuals committed the allegedly discriminatory acts before and during the statutory period. *Compare id.* ¶ 20 (alleging that Robert Duru was M&T's lending officer who requested that Mr. McFadden sign the 2017 guaranty) *with id.* ¶ 57 (alleging that an M&T Bank Officer named Charles Martin was the one who interfered with Ms. McFadden's Financing Authority application); *see also Maisha*, 641 F. App'x at 249 (4th Cir. 2016) ("[E]ach event related to a discrete act that was not repeated by the individual actor, and [Plaintiff's] general allegations of a pattern or practice of discrimination do not suffice to render these claims timely."). Accordingly, the continuing violations doctrine does not apply, and the Court will only consider the allegations related to events that occurred after September 18, 2020.

**ii. Mr. McFadden's guaranty**

Mr. McFadden's "defensive" claim related to his signing of the guaranty is also time-barred. Plaintiffs' amended complaint did not include a separate count for a declaratory judgment. Instead, it included a request that the Court "[d]eclare that Mr. McFadden has no legal obligation to repay the 2018 BALOC." ECF No. 9 at 30. In their briefing on the motion to dismiss, Plaintiffs clarified that their ECOA claim is "one basis for" such a declaration. ECF No. 12 at 10. Mr. McFadden contends that even if Plaintiffs' pre-2020 ECOA claims are otherwise time-barred, his claims related to the 2017

guaranty should not be dismissed for two reasons: (1) under the discovery rule, he allegedly only became aware that he still had obligations under the 2017 guaranty in 2025 when he received demand letters, and (2) the statute of limitations does not apply because his request for a declaration absolving him of liability is a "defensive" claim. *Id.* at 8–10. Neither argument is persuasive.

First, the discovery rule does not apply to ECOA claims. Plaintiffs' motion notes that "Maryland courts apply the [d]iscovery rule," but cites no authority for its applicability under the ECOA, which is a federal statute. *Id.* at 8. The ECOA requires that actions "be brought [no] later than 5 years after the date of the occurrence of the violation[.]" 15 U.S.C. § 1691e(f). It does not contain a discovery rule, and Plaintiffs have not shown that this Court should infer one. *See Hamilton v. 1st Source Bank*, 928 F.2d 86, 88 (4th Cir. 1990) ("[W]hen Congress has intended a discovery rule, it has proven capable of writing one."); *Rotkiske v. Klemm*, 589 U.S. 8, 14 (2019) ("In effect, [Plaintiff] asks the Court to read in a provision stating that [the] limitations period begins to run on the date an alleged FDCPA violation is discovered. This expansive approach to the discovery rule is a 'bad wine of recent vintage.'") (quoting *TRW Inc. v. Andrews*, 534 U.S. 19, 37 (2001) (Scalia, J., concurring in judgment)).

Even if the discovery rule were available, however, it would still not render Mr. McFadden's claims timely. The guaranty stated that it was "a continuing Guaranty that shall remain effective under successive transactions until expressly terminated as hereinafter provided." ECF No. 9-3 at 3. Mr. McFadden, who is an attorney himself, alleges that he read this agreement and provided proposed changes. ECF No. 9-2; ECF No. 9 ¶¶ 23–25. He claims that he was unaware that the guaranty was still in effect after Ms. McFadden obtained an increased BALOC in 2018 and signed a new guaranty that

Mr. McFadden did not sign. ECF No. 12 at 9. But the 2017 guaranty states that it "remains effective under successive transactions until expressly terminated as hereinafter provided." ECF No. 9-3 at 3. And regardless, Mr. McFadden's potential ECOA claim for improperly requiring his guaranty in violation of the regulations accrued in 2017 when he signed it. If he believed he had been improperly required to sign the guaranty, he could have asserted that claim at that time. Even if Mr. McFadden had understood his obligations to have changed in 2018, that change would not have altered his rights to challenge what he alleges was discriminatory and unlawful action by M&T. Accordingly, Mr. McFadden cannot rely upon the discovery rule.

As to Mr. McFadden's claim that a "defensive" ECOA action is not subject to the statute of limitations, there is little caselaw bearing on this argument within the Fourth Circuit: the parties only cite one case—*In re Westbrooks*, 440 B.R. 677 (Bankr. M.D.N.C. 2010)—and this Court's own research has not uncovered any additional cases. In *Westbrooks* the court held that the ECOA's statute of limitations did not apply to an adversary proceeding brought by a husband and wife (the Westbrooks) in relation to their underlying bankruptcy. *Id.* at 682–83. The Westbrooks were in a similar situation to the McFaddens: Ms. Westbrook had been required to sign a guaranty in connection with Mr. Westbrook's business, with which she had "no connection." *Id.* at 679. The court noted first that "the case law indicates that the statute of limitations does not apply to bar claims under the ECOA when such claims are brought defensively in response to an affirmative action by the creditor to collect on the debt." *Id.* at 682–83. The court then reasoned that the Westbrooks' complaint for a declaratory action was "for all practical purposes, a defense to the proof of claim" filed by the creditor in the Westbrooks' bankruptcy case. *Id.* at 683. Because of this, the court concluded the

Westbrooks' ECOA action seeking affirmatively to void the guaranty was not untimely because it was akin to a defense. *Id.* ("While there are no cases directly on point, courts have held that a complaint can contain ECOA *defenses* that would otherwise be barred by the statute of limitations.").

*Westbrooks* repeatedly cites *Silverman v. Eastrich Multiple Investor Fund, L.P.*, a Third Circuit case that likewise held that an action for declaratory or injunctive relief under the ECOA is not barred when it is "a defense to efforts to collect on said guaranty." 51 F.3d 28, 29 (3d Cir. 1995). The *Silverman* court reached this conclusion by analogizing such an action to the "right of recoupment" that exists under common law for a guarantor to "challenge a loan as usurious or on other recognized grounds." *Id.* at 32 (citing *McCarthy v. First Nat'l Bank,* 223 U.S. 493, 498 (1911)). The court recognized that such an exception was not found in the ECOA, but held that interpreting the statute to allow such actions "best forwards its purposes, particularly in light of the inclusion of a broad remedial provision . . . in the ECOA." *Id.* (citing 15 U.S.C. § 1691e(c), which states that "[u]pon application by an aggrieved applicant, the appropriate United States district court or any other court of competent jurisdiction may grant such equitable and declaratory relief as is necessary to enforce the requirements imposed under this subchapter").

The Court declines to adopt the approach in *Silverman* and *Westbrooks* for several reasons.

First, in the years since *Silverman* and *Westbrooks* (and all the other cases Plaintiffs cite to support their argument, *see* ECF No. 12 at 9), the Fourth Circuit has explicitly held that "[a] request for declaratory relief is barred to the same extent that the claim for substantive relief on which it is based would be barred." *CGM, LLC v.*

*BellSouth Telecommunications, Inc.*, 664 F.3d 46, 55–56 (4th Cir. 2011) (quoting *Int'l Ass'n of Machinists & Aerospace Workers v. Tenn. Valley Auth.*, 108 F.3d 658, 668 (6th Cir. 1997)); *see also Poly-Med, Inc. v. Novus Sci. Pte. Ltd.*, Case No. 15-cv-1964-JMC, 2018 WL 4223443 (D.S.C. Aug. 27, 2018) ("The . . . Fourth Circuit, and many of her sister circuits, have found that claims for declaratory relief are governed by the period of limitations applicable to the substantive claims underlying the action."), *appeal dismissed,* 773 F. App'x 727 (4th Cir. 2019). There is nothing in the ECOA that distinguishes between claims for equitable relief and those seeking remedies at law for purposes of the statute of limitations. Accordingly, applying the Fourth Circuit's binding standard and the plain text of the ECOA, Mr. McFadden's request for declaratory relief is barred as untimely to the same extent Plaintiffs' damages claims are.

And even if the Court were to adopt the standards articulated in *Westbrooks* and *Silverman*, Mr. McFadden would not be entitled to relief because those cases are distinguishable. In *Algrant v. Evergreen Valley Nurseries Limited Partnership*, the Third Circuit held that "an action for declaratory relief will be barred to the same extent the applicable statute of limitations bars the concurrent legal remedy." 126 F.3d 178, 181 (1997) (citing *Int'l Ass'n of Machinists*, 108 F.3d at 668). Recognizing the potential conflict with *Silverman*, which had been issued two years prior, the *Algrant* court concluded that the facts before it were distinguishable. In *Silverman*, the defendant creditor had already brought a state court action seeking to collect on the debt that the plaintiff was trying to void under the ECOA. *Algrant*, 126 F.3d at 182. Thus, the court there held that plaintiffs had brought the declaratory action as a "defense" to a specific case, analogous to a recoupment action. *Id.* In *Algrant*, by contrast, the defendant had not yet sought to collect on the debt in a court action. Accordingly, the court concluded

in *Algrant* that *Silverman*'s rule was inapplicable because "the creditors have taken no legal action to collect on the [debt], plaintiffs have no voidable judgment, and recoupment is not now before us." *Id.* at 182–83. Here, similarly, M&T has not brought a legal action but instead sent demand letters. *See* ECF No. 9 ¶ 99. Mr. McFadden's claim is thus more analogous to a typical declaratory judgment action as seen in *Algrant* than a defense to a specific legal action, as in *Silverman* and *Westbrooks*.

Accordingly, the Court concludes that all of Plaintiffs' claims connected to their allegations predating September 2020—including Mr. McFadden's request for declaratory relief voiding the 2017 guaranty—are barred by the statute of limitations.

### C. The remaining allegations fail to state an ECOA claim

#### i. Discrimination

The ECOA makes it unlawful to "discriminate against any applicant, with respect to any aspect of a credit transaction[] . . . on the basis of" numerous protected characteristics, including "sex or marital status." 15 U.S.C. § 1691. To state a claim under this provision, a plaintiff thus must "plausibly allege" that the defendant "discriminated on the basis of" a protected characteristic. *Connolly v. Lanham*, 685 F. Supp. 3d 312, 323 (D. Md. 2023). In a case alleging discrimination through disparate treatment, such as this one, "a plaintiff must sufficiently allege facts to show that the defendant had a discriminatory intent or motive." *Iguade v. First Home Mortg. Corp.*, Case No. 23-cv-1067-LKG, 2024 WL 1283327, at *3 (D. Md. Mar. 26, 2024); *see also* ECF No. 19 at 8 ("[T]he theory under which Plaintiffs here are proceeding is disparate treatment[.]"). Courts analyzing whether plaintiffs have successfully pled or created a factual dispute regarding discrimination look to the substantive frameworks applied under Title VII and other federal discrimination statutes; thus, "[a] plaintiff may prove discriminatory

intent or motive by showing direct evidence of discrimination, or by using the *McDonnell Douglas* burden-shifting framework." *Iguade*, 2024 WL 1283327, at *3; *see also Wise*, 496 F. App'x at 285 ("Most courts that have considered ECOA discrimination claims have allowed plaintiffs to proceed under the burden-shifting framework laid out by the U.S. Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), in the context of Title VII employment discrimination.").

There is some divergence within the Fourth Circuit and the District of Maryland about how to analyze ECOA discrimination at the pleading stage. *See Boardley v. Household Fin. Corp. III*, 39 F. Supp. 3d 689, 710 (D. Md. 2014) ("The elements for a prima facie case of ECOA lending discrimination are less well-settled."). Some courts, following the Fourth Circuit's unpublished decision in *Wise*, have articulated a four-element test for ECOA claims that requires plaintiffs to plead the existence of similarly situated comparators who were treated more favorably. *See Wise*, 496 F. App'x at 285; *Iguade*, 2024 WL 1283327, at *4; *Flippings v. U.S. Home Mortg.*, Case No. 15-cv-4021-TDC, 2017 WL 728179, at *2. Other courts have articulated a three-element standard that leaves off the comparator requirement. *See Boardley*, 39 F. Supp. 3d at 710–11; *Walker v. Bank of Am. Corp.*, Case No. 18-cv-02466-PWG, 2019 WL 3766824, at *3–6 (D. Md. Aug. 8, 2019). But regardless of the precise articulation of the elements of an ECOA discrimination claim, plaintiffs who bring such claims must plausibly allege at the pleading stage that the defendant's actions were due to the plaintiffs' protected characteristic. *See Iguade*, 2024 WL 1283327, at *6 (D. Md. Mar. 26, 2024) ("[T]here are no facts in the complaint to show that First Home's conduct during the mortgage application process, and its ultimate denial of Plaintiffs' mortgage application, was due to their race."); *see also Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017)

(holding in a § 1981 case that plaintiffs "need not plead facts sufficient to establish a prima facie case of . . . discrimination to survive a motion to dismiss," but must still satisfy "the more stringent pleading standard established in *Iqbal* and *Twombly*."); *Seabrook v. Driscoll*, 148 F.4th 264, 270 (4th Cir. 2025) (holding in a Title VII case that "[a]lthough [Plaintiff] disputes the investigative findings, she has alleged no factual basis to support the conclusion that discriminatory bias, rather than the outcome of the investigation, was [Defendant's] true motivation for disciplining her."); *Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022) ("To state a claim for unlawful termination, a Title VII plaintiff must allege facts sufficient to raise a plausible inference that his employer discharged him because of his race.").[4]

Reviewing the complaint here, Plaintiffs' timely allegations do not plausibly allege any basis to infer that any of the decisions they complain about were because of Ms. McFadden's gender. The complaint's post-September 2020 allegations relate to three categories of conduct: (1) M&T's interference with Ms. McFadden's Financing Authority application; (2) M&T's denials of Ms. McFadden's requests for financing and to "term out" the BALOC; and (3) M&T's placement of Mr. McFadden's name on CapFin Tax's checks and the "misappropriation" from its bank account. *See* ECF No. 19 at 12. Plaintiffs do not allege any concrete facts indicating that these actions by M&T were due to Ms. McFadden's gender. The complaint states in a conclusory fashion that the only

[4] The Court need not decide whether, for an ECOA discrimination claim, a plaintiff must plead and prove that unlawful discrimination was a "motivating factor" for the adverse credit determination (akin to the Title VII causation standard) or the "but for" cause of the adverse action (as under, for example, 42 U.S.C. § 1981 discrimination claims). Plaintiffs' discrimination claim here, with respect to M&T's post-September 2020 actions, falls short of both standards.

possible explanation was M&T's discriminatory ill will towards Ms. McFadden. *See, e.g.*, ECF No. 9 ¶ 117 ("Each of these actions was part of a continuing pattern of discriminatory conduct and evidences the actual reason and motive behind them: the Bank's institutional gender bias as to the credit-worthiness of Ms. McFadden and her businesses."). But the complaint assumes discriminatory intent by ignoring equally plausible alternative explanations, which is not permissible even at the pleading stage. *See Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020) ("Being aware of no alternative explanation and guessing that conduct is racially motivated does not amount to pleading facts to support a claim of racial discrimination."). Regarding the Financing Authority application, for example, the complaint states that M&T interfered with the application because it "realized that the more than $2.2 million in deposits from CapFin Tax was running through the Bank annually and the interest income from the BALOC was now going to disappear." *Id.* ¶ 57. The complaint itself thus provides a non-discriminatory explanation for M&T's conduct, yet nonetheless attributes it to gender bias.

Similarly, regarding the denials of restructuring or financing, Plaintiffs do not allege anything about these denials that would support an inference that they were motivated by discrimination as opposed to legitimate business-related decisions by M&T. While such denials could be "*consistent* with discrimination," alone they do not "support a *reasonable inference* that the decisionmakers were motivated by bias." *McClearly-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 586 (4th Cir. 2015) (emphasis in original). Plaintiffs also have not alleged any specific male comparators who were similarly situated but whose similar applications or requests were not denied. *See Wise*, 496 F. App'x at 285–86 (affirming dismissal of an

ECOA case where the complaint was "devoid of any plausible substantive allegations . . . that non-minority applicants of similar credit stature were extended credit or were otherwise given more favorable treatment than plaintiffs") (quotations omitted).

As to the issue with Mr. McFadden's name appearing mistakenly on a set of paper checks, Plaintiffs contend that it shows M&T thought Mr. McFadden must have been a co-owner or benefactor of Ms. McFadden's business and thus demonstrates that M&T held discriminatory views. *Id.* ¶ 116 ("Defendant further violated the proscriptions of 12 C.F.R. § 1002.4(a) by affirmatively causing Mr. McFadden's name to be placed on checks related to CapFin Realty's operating account at the Bank, clearly evidencing the Bank's view that Mr. McFadden was somehow the financial backstop to a woman and her woman-owned business, the credit-worthiness of which was questionable given Ms. McFadden's gender."). But this line of reasoning is implausible in the context of Plaintiffs' other allegations. Plaintiffs contend that M&T interfered with their Financing Authority application and denied their restructuring requests because it knew that "CapFin was a woman-owned business." ECF No. 9 ¶ 4. If M&T held discriminatory views towards women-owned businesses, it would presumably *help* CapFin Tax and CapFin Realty's credit applications if M&T believed that Mr. McFadden was a co-owner or "backstop." Regardless of this inconsistency, Plaintiffs' complaint also does not allege any facts explaining how or why the check issuance error in 2025 reflects M&T's discriminatory intent with regards to adverse credit decisions that occurred years prior. As with the other portions of the complaint, the Court would have to speculate to infer that M&T discriminated against Plaintiffs on the basis of sex, even assuming the factual allegations are true.

Finally, the same reasoning applies to M&T's withdrawal from CapFin Realty's bank account in March 2025. *See* ECF No. 9 ¶¶ 76–81. Plaintiffs have sufficiently alleged that the $6,000 withdrawal should not have occurred and that M&T's understanding of the relationship between CapFin Tax and CapFin Realty leading to the withdrawal was erroneous, as M&T returned the withdrawn funds. *Id.* ¶ 79. But nowhere in the complaint do they plausibly allege any connection between M&T's error and Ms. McFadden's gender.

In their supplemental brief, Plaintiffs contend that their case bears a "striking resemblance" to *Connolly*, 685 F. Supp. 3d 312. ECF No. 19 at 8. In that case, Judge Gallagher of this Court held that two plaintiffs who were attempting to refinance their home loans had plausibly alleged "intentional depression of [their] home value on the basis of their race," and thus had successfully stated a claim under the ECOA and other federal antidiscrimination statutes. *Connolly*, 685 F. Supp. 3d at 324.

The facts of *Connolly* are distinguishable and, if anything, show the deficiencies in Plaintiffs' allegations here. The plaintiffs in that case, who were Black, alleged discrimination by an appraiser and a loan company. The defendant appraiser, in conducting his appraisal analysis, had chosen two out of four comparable homes in census blocks with a "significant Black population," even though the neighborhood where Plaintiffs lived was overall "nearly 80% white." *Id.* One of the comparison homes was "located on the opposite side" of the neighborhood from the plaintiffs, and the other was outside the neighborhood entirely. *Id.* Plaintiffs alleged that the ultimate appraisal value was "impossibly low given the characteristics of their neighborhood and their home." *Id.* at 320. In other words, the plaintiffs in *Connolly* alleged concrete facts that plausibly supported the inference that the defendant had "a race-based motivation" for

his "appraisal analysis." *Id.* at 324. Plaintiffs also alleged that they raised these facts and complained of the appraiser's discriminatory analysis to a loan company defendant that had refused to extend a loan based upon the appraisal. *Id.* at 320, 324. The loan company "failed to inform Plaintiffs about their right to a formal appeal until after the deadline had passed" and then "stopped responding to [their] inquiries," and thus the Court found that the plaintiffs had plausibly alleged discriminatory intent as to the loan company defendant as well. *Id.* at 324. After the plaintiffs had "whitewashed" their home by "remov[ing] markers of Black identity" and not being home during the appraisal visit, their home was re-assessed at "a value nearly 60% greater" (by a different appraiser). *Id.* at 320. Plaintiffs here have not alleged any concrete facts similar to the *Connolly* plaintiffs' plausible allegations that the appraiser defendant had intentionally selected comparison homes based on the race of the owners and that the loan company defendant had intentionally disregarded the clear evidence of discrimination.

Plaintiffs have failed to plausibly allege that M&T acted with discriminatory intent with respect to their business relationship with CapFin Realty or CapFin Tax after September 2020. Accordingly, they have failed to state a claim for discrimination under the ECOA.

**ii. Procedural claims**

Finally, that leaves Plaintiffs' claims related to the lack of written explanations. These allegations claim procedural violations of the ECOA. As explained above, 15 U.S.C. § 1691(d) requires creditors to provide a "statement of reasons" to applicants against whom they have taken "adverse action" within 30 days of the application. Plaintiffs allege that M&T violated this provision in connection with two adverse actions

occurring after September 2020: (1) M&T declined to finance the purchase of a large Jackson Hewitt franchise operator in October 2020, ECF No. 9 ¶ 49, and (2) M&T declined a request to "term out" the BALOC in December 2021, *id.* ¶ 72. But the complaint fails to allege an actual regulatory violation regarding either incident.

Concerning the first denial, the complaint does not allege that M&T failed to provide a statement of reasons, but instead contends that Ms. McFadden "had to request" that M&T provide her with one. *Id.* ¶ 49. The complaint is silent as to when the requested statement of reasons eventually came, and specifically whether it complied with the 30-day timeframe provided in the regulation.

And regarding the second denial in December 2021, a statement of reasons was not required. The statute defines "adverse action" as "[1] a denial or revocation of credit, [2] a change in the terms of an existing credit arrangement, or [3] a refusal to grant credit in substantially the amount or on substantially the terms requested." 15 U.S.C. § 1691(d)(6). The complaint alleges that in December 2021 (and in October 2023 via telephone), Ms. McFadden requested that M&T "term out" the existing 2018 BALOC. ECF No. 9 ¶¶ 70, 72. Elsewhere in the complaint, Plaintiffs clarify that to "term out" means to "convert to a term note with amortized paydown of principal." *Id.* ¶ 2. In other words, the "term out" request was not a request for additional credit, but instead a request to change the terms of the BALOC so that the payments would occur on a different schedule. Thus, under the statute, M&T's denial of this request was not an adverse action. It was not a "denial . . . of credit" (condition #1) or a "refusal to grant credit" (condition #3) on the same terms. 15 U.S.C. § 1691(d)(6). M&T's denial was also not condition #2, a "change in the terms of an existing credit arrangement." It was a denial of a *request* to change terms, but the text of § 1691(d)(6) clearly does not include

such a denial as a condition triggering the notice provision. It treats the change in terms itself as the triggering condition.

Accordingly, because the complaint does not include a plausible, timely allegation of M&T's failure to comply with § 1691(d), Plaintiffs' "lack of written explanation" procedural ECOA claim is dismissed as well.

### D. Maryland law claims

Having dismissed Plaintiffs' federal claims under the ECOA, that leaves four claims under Maryland state law in Counts II–V. Federal courts may hear certain state claims related to federal claims via supplemental jurisdiction. 28 U.S.C. § 1367(a). But a district court may decline to exercise supplemental jurisdiction over a state law claim if it "has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). "[A] district court has inherent power to dismiss the case or, in cases removed from State court, to remand, provided the conditions set forth in § 1367(c) for declining to exercise supplemental jurisdiction have been met." *Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 617 (4th Cir. 2001); *see also Ramsay v. Sawyer Prop. Mgmt. of Md., LLC*, 948 F. Supp. 2d 525, 537 (D. Md. 2013), *aff'd*, 593 F. App'x 204 (4th Cir. 2014) ("[S]upplemental jurisdiction is a doctrine of discretion, and not a plaintiff's right."). "Among the factors that inform this discretionary determination are convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Morales v. Richardson*, 841 F. Supp. 2d 908, 914 (D. Md. 2012), *aff'd*, 475 F. App'x 894 (4th Cir. 2012); *see also Gregory v. Otac, Inc.*, 247 F. Supp. 2d 764, 773 (D. Md. 2003) ("A majority of the courts which have considered the question have declined to exercise pendent jurisdiction over a state claim when the federal claims have been disposed of prior to a full trial on the

merits."); 13D *Wright & Miller's Federal Practice & Procedure* § 3567.3 (3d ed. rev. 2026) ("As a general matter, a court will decline supplemental jurisdiction if the underlying claims are dismissed before trial.").

Here, the case is at an early stage, well before trial. The parties have not invested significant resources in litigating the case. Considering principles of fairness, judicial economy, federalism, and comity, this Court will decline to exercise supplemental jurisdiction over Plaintiffs' state law claims.

## IV. CONCLUSION

For the foregoing reasons, M&T's motion to dismiss is granted and Plaintiffs' complaint will be dismissed without prejudice. A separate order follows.

Date: August 18, 2026

/s/
Adam B. Abelson
United States District Judge